THE STATE, DEFENDANT IN ERROR, v. JAMES BAVIER ET AL., PLAINTIFFS IN ERROR.

Argued March 8, 1916—Decided June 19, 1916.

Where defendants, who had been sworn in as deputy sheriffs to protect a manufacturing plant during a strike of its employes, were on trial for the killing of a man during an altercation with a mob of strikers, it was error to exclude testimony of previous rioting and disorder among the strikers which had been continuous for some time previous to the shooting, since such evidence would tend to show that the deputies believed that some of the employes, whom it was their duty to protect, were in danger of attack, and also since such evidence would have a bearing on the contention that the mob, and not the deputies, were the real aggressors and that the deputies acted in self-defence.

On error to the Supreme Court.

For the plaintiffs in error, *Joseph S. Stricker, George W. C. McCarter* and *Robert H. McCarter.*

For the state, *John W. Wescott,* attorney-general, and *Herbert Boggs,* assistant attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiffs in error, defendants below, together with sixteen other persons, were indicted by the grand jury of Middlesex county for the crime of murder committed upon the body of one Alesandro Tessitore. The indictment having been removed by *certiorari* to the Supreme Court, application was there made by the state for a severance, with the result that the plaintiffs in error (nine in number), together with one Smith, were ordered to be tried separately from the other fifteen persons named in the indictment. The trial resulted in the acquittal of Smith, and the conviction of the plaintiffs in error of the crime of manslaughter.

Numerous grounds of reversal are urged before us. Some of them are directed at rulings of the court in disposing of challenges to certain persons who were drawn during the impaneling of the jury. Others are directed at rulings during the trial upon matters of evidence, and still others are directed at the charge to the jury.

The first contention made with relation to the drawing of the jury is that the court improperly restricted the defendants collectively to five peremptory challenges, whereas counsel assert, the law entitled each of the defendants to that number. The question raised by this contention is purely academic, so far as this case is concerned. Before the drawing of the jury was begun, counsel requested the trial court to state whether, under the law, each defendant was entitled to five peremptory challenges, or whether they were entitled to that number collectively, to which the court replied that if the occasion should arise he would rule that the defendants were entitled to but five challenges collectively. The necessity for

any ruling upon this matter, however, did not arise, for only two peremptory challenges were interposed on behalf of the defendants, or any of them, leaving three unused, even under the view expressed by the court when the jury box was filled.

The only other contention with relation to the impaneling of the jury is that the court wrongly excluded certain challenges for cause interposed against persons whose names were drawn from the panel. It is unnecessary to deal with these challenges *seriatim;* it is enough to say that in no case was the challenge rested upon a ground which would disqualify the juror from service. The overruling of each of these challenges, therefore, was entirely proper.

The next contention is that the defendants did not have a fair trial. This contention is based upon the following situation. During the giving of the testimony of Bavier, certain of the jurors in the early part of his examination, declared that they had not heard more than half of what he said, and others said that they had not heard the last part of his testimony. Thereupon, apparently without any instruction from the court, the stenographer proceeded to read the last two questions and answers. It is said that it was the duty of the court to direct the whole of the witness' testimony to be read. But neither counsel for the plaintiffs in error, nor any member of the jury, requested that this should be done, or that any more of it should be read than has been indicated. We fail to see in this occurrence anything injurious to the defendants or prejudicial to their rights. The trial court had a right to assume, in the absence of any declaration to the contrary, that both the complaining jurors and counsel for the defendants were satisfied with the reading of that part of the testimony which has just been mentioned, and did not desire the reading of any further portions thereof. If counsel considered that there should be a further reading, he should have applied to the court to direct that this course should be pursued. Failing to do so his clients cannot now complain of non-action on the part of the court.

The principal ruling upon evidence which is complained of was the exclusion of testimony relating to the conduct of

a body of men, of whom the person who was killed was one, anterior to the day of the homicide. In order to appreciate the force of the contention a brief recital of the facts is necessary.

The Williams & Clark Fertilizer Company operated a plant located on the Kill-von-Kull at a place called Roosevelt in Union county. The Liebig Manufacturing Company carried on a similar business at a point about a mile and a half distant. Both of these concerns were owned and controlled by the American Agricultural Chemical Company. Some two weeks prior to the occurrence of the homicide the great body of the employes of these two concerns declared a strike against their employers. For the protection of their property, and those who remained in their employ against the strikers, the two companies thereupon employed the defendants, and some thirty odd other men as guards. All of these men were sworn in by the sheriff of Union county as special deputies. On the 19th of January, 1915, this being the day when the homicide occurred, the strikers, some two or three hundred in number, or a mob of men who were supposed to be the strikers, armed with clubs, stones and some fire arms, visited the Liebig plant and held up a train in front of the factory which was supposed to have employes of that company upon it. Shortly afterwards, this mob started in the direction of the Williams & Clark plant, that being the place where the defendants and their associates had been stationed. When the mob reached a point in plain sight of the Williams & Clark factory they held up another train, with the apparent purpose of seeing whether any men who still remained in the service of the latter company, or any strike breakers, were on board of it. The defendants and some of their associates thereupon left the Williams & Clark factory and went toward the railroad. An altercation then ensued in which a number of shots were fired by the deputies, and Tessitore and one Kalman Batyi were killed. The claim of the state was that this firing was not only without any legal justification, but was purely wanton. The defendants, on the other hand, contended among other things, that the killing occurred in the resisting of an

assault made upon the deputies by the mob, and was done in self-defence. The purpose of the excluded testimony was to show that to the knowledge of the defendants, almost from the time of the institution of the strike there had been more or less disorder among the strikers as a body; that they had held up trains previously; had frequently surrounded the plant, both of the Liebig Company and Williams & Clark; had thrown stones and broken windows there; that they had charged the gate of the latter plant, entered by force and taken out employes who were working during the strike, and that during all that period there was a state of continuous disorder by the strikers against these two plants.

It seems to us that this evidence was both competent and material upon the question whether these defendants had reasonable cause to believe that in performing what they conceived to be their duty in going out toward the railroad tracks for the apparent purpose of protecting employes of the Williams & Clark Company if any should happen to be on the train, they were in great danger of being assaulted and injured by the members of this disorderly body of men. It was also competent and material as tending to support the claim of the defendant that the mob, and not the deputies, were the aggressors, and that what was done by the deputies was done in self-defence. The purpose of the offer was, not to prove mere isolated acts upon the part of the body of strikers, but a continuous course of conduct from which the jury might properly find that the state of mind of the members of the body of strikers which had been exhibited by their conduct in earlier days of the strike, still persisted at the time of the occurrence which led to the shooting of Tessitore. The exclusion of this testimony being palpably injurious to the defendants compels a reversal of the judgment of conviction.

As the case must go back for a retrial for the reason just stated, we deem it proper to say that we have examined the various reasons for reversal which are directed at the charge to the jury, and that we find nothing in them which would justify a reversal. The instruction with relation to the law

of self-defence was accurate in its application to the case in hand. The instruction that all of the defendants could be held guilty, although it was impossible to identify the man who actually fired the fatal shot, was not erroneous, but should have been qualified by the proviso that the unlawful act in which the defendants with others were engaged was one of which the crime charged against the defendants was a natural or probable consequence. The requests to charge, except so far as they were in fact charged, were properly refused.

The judgment under review will be reversed.

*For affirmance*—BLACK, J.   1.

